UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLAUDIO DUARTE,                          *
                                         *
                Petitioner,              *
        v.                               *        Civil Action No. 17-cv-12450-IT
                                         *
STEVEN SOUZA, Superintendent,            *
                                         *
                Respondent.              *

MEMORANDUM & ORDER

May 29, 2018

TALWANI, D.J.

        Petitioner Claudio Duarte's <u>Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C.</u>

<u>§ 2241</u> [#1] and <u>Motion for Preliminary Injunction, Temporary Restraining Order and Request</u>

<u>for Expedited Hearing</u> [#9] seek Petitioner's release from immigration detention and a stay of

removal while his motion to reopen proceeds through the immigration courts. Respondent's

<u>Motion to Dismiss Petition for Writ of Habeas Corpus</u> [#16] seeks dismissal of the petition on

the grounds that Petitioner fails to state a claim as to his detention and that this court lacks

subject-matter jurisdiction over Petitioner's final removal order. For the following reasons,

Petitioner's <u>Motion for Preliminary Injunction</u> [#9] is DENIED and Respondent's <u>Motion to</u>

<u>Dismiss Petition for Writ of Habeas Corpus</u> [#16] is ALLOWED.[1]

---

[1] Petitioner also sought his release or a stay of removal pending resolution of these proceedings.
Pet'r's Pet. [#1], Mot. Prelim. Inj., TRO and Req. Expedited Hr'g. [#9]; Mot. TRO [#10].
Respondent subsequently notified the court that he agreed not to remove Petitioner until the court
is able to address the merits of the Petition. <u>Notice of Cancellation of Removal</u> [#13]. In light of
that agreement, the court denies as moot Petitioner's request for a stay pending resolution of
these proceedings. The court will briefly stay entry of judgment, however, given Respondent's
suggestion that Petitioner may pursue a stay in the court of appeals if the court grants
Respondent's <u>Motion to Dismiss</u> [#16]. Resp't Suppl. Br. on Removal & in Supp. Mot. Dismiss
("Resp't Third Suppl. Br.") at 8 [#35]. Counsel shall confer, and in the event that Petitioner
intends to seek an emergency stay from the First Circuit, determine if Respondent agrees not to

I.      Background

Petitioner is a citizen of Cape Verde. Pet'r's Pet. ¶ 6 [#1]. He has lived in the United

States since 1994 (when he was three years old), and obtained lawful permanent residence in

February 2011. Id. ¶ 14 [#1]; see also Aff. of Susan B. Church in Supp. Mot. Prelim. Inj., TRO &

Req. Expedited Hr'g. ¶¶ 3-4 ("Church Aff.") [#15]; Resp't Third Suppl. Br. Ex. 3, at 3 [#35-3].

He is the father of two United States citizen children, and his own father, who raised Petitioner,

is a pastor of a church in Rhode Island and a naturalized United States citizen. Pet'r's Pet. ¶¶ 14-

15 [#1]; Church Aff. ¶ 5 [#15].

In December 2012, Petitioner was convicted in Rhode Island District Court under Rhode

Island General Laws, section 11-5-3 (simple assault or battery) and sentenced to "one year

suspended, and one year of probation." Resp't Third Suppl. Br. Ex. 3, at 3 [#35-3].[2] In April

2013, Petitioner was placed in removal proceedings. Pet'r's Pet. ¶ 16 [#1]; Resp't Third Suppl.

Br. Ex. 3, at 3 [#35-3]. Petitioner sought to terminate the proceedings, arguing that his Rhode

Island conviction did not amount to a crime of violence.[3] Pet'r's Pet. ¶ 16 [#1]; Church Aff. ¶ 4

---

remove Petitioner until a panel (or if Respondent contends greater urgency in removal is
required, a single judge) of the First Circuit may consider the request for a stay. Counsel shall
promptly report to court: whether Petitioner intends to pursue a stay of removal in the First
Circuit, and if so, whether Respondent agrees not to remove Petitioner from this District until
that request may be considered.

[2] The parties refer to this conviction at times as one for "assault," and at other times as one for
"assault and battery." See Pet'r's Pet. ¶ 16 [#1] ("simple assault"); Pet'r's Pet. Ex. 2, at 3 [#1-2]
("Assault"); Resp't Third Suppl. Br. Ex. 3, at 3 [#35-3] ("simple assault and battery").

[3] As the Supreme Court has explained:

The Immigration and Nationality Act (INA) renders deportable any alien convicted of
an "aggravated felony" after entering the United States. 8 U. S. C.
§1227(a)(2)(A)(iii). Such an alien is also ineligible for cancellation of removal, a
form of discretionary relief allowing some deportable aliens to remain in the country.
See §§ 1229b(a)(3), (b)(1)(C). Accordingly, removal is a virtual certainty for an alien
found to have an aggravated felony conviction, no matter how long he has previously
resided here.

[#15]. On May 30, 2013, the Immigration Judge denied the motion to terminate, and ordered Petitioner to be removed to Cape Verde. Pet'r's Pet. ¶ 16 [#1]; Church Aff. ¶ 4 [#15]. Although Petitioner originally appealed the decision, he withdrew his appeal on June 19, 2013. Pet'r's Pet. ¶ 16 [#1]; Church Aff. ¶ 4 [#15]. The Immigration Judge allowed the motion to withdraw on June 21, 2013. Pet'r's Pet. ¶ 16 [#1]; Church Aff. ¶ 4 [#15], and a final order of removal to Cape Verde issued on June 25, 2013. Resp't Mem. in Supp. of Mot. Dismiss at 1 [#17]; Notice of Intent to Remove Ex. 1, Decl. Ass't Field Office Dir. ¶ 3 [#6-1].[4] Petitioner states that Immigration and Customs Enforcement ("ICE") was unable to obtain the necessary travel documents to remove Petitioner. Pet'r Mem. in Resp. to Resp't Mot. Dismiss at 3 ("Pet'r Opp.") [#20]. Petitioner was released back into his community on October 11, 2013, on an order of supervision. Resp't Third Suppl. Br. Ex. 3, at 3 [#35-3].

In June 2017, after an arrest by the Pawtucket, Rhode Island, police department for failing to appear in connection with an earlier charge of receiving stolen goods, ICE officials detained Petitioner and served him with a "Notice of Revocation of Order of Supervision." Id. at 1, 3. The June 9, 2017, Notice of Revocation states in relevant part:

> This letter is to inform you that your case has been reviewed and it has been determined that you will be kept in the custody of [ICE] at this time. This decision has been made on a review of your file and on account of changed circumstances in your case.

---

The INA defines "aggravated felony" by listing numerous offenses and types of offenses, often with cross-references to federal criminal statutes. § 1101(a)(43); see *Luna Torres* v. *Lynch*, 578 U. S. ___, ___ (2016) (slip op., at 2). According to one item on that long list, an aggravated felony includes "a crime of violence (as defined in section 16 of title 18 . . . ) for which the term of imprisonment [is] at least one year." §1101(a)(43)(F). The specified statute,18 U.S.C. §16, provides the federal criminal code's definition of "crime of violence."

Sessions v. Dimaya, 584 U.S. ___ (2018) (slip. op. at 1-2).

[4] The Assistant Field Office Director has declared that Petitioner's order of removal was final as of May 30, 2013. Resp't Third Suppl. Br. Ex. 1, Decl. Ass't Field Office Dir. ¶ 3 [#35-1].

On this date, a decision was made to revoke your Order of Supervision based on the fact that you violated your Order of Supervision with ICE by not coming to your scheduled appointments, you were arrested and convicted[5] of receiving stolen goods, and there is significant likelihood of removal in the reasonably foreseeable future in your case.

Based on the above and pursuant to 8 CFR 241.13, you are to remain in ICE custody at this time. You will promptly be afforded an informal interview at which you will be given the opportunity to respond to the reasons or the revocation and to provide any evidence to demonstrate that your removal is likely. If you are not released following the informal interview, you will receive notification of a new review, which will occur within approximately three months from the date of this notice.

Id. at 1.

On August 25, 2017, ICE issued its "Decision to Continue Detention" stating that ICE had decided to continue to detain Petitioner "based on a review of your file and/or your personal interview and consideration of any information you submitted to ICE reviewing officials." Id. at 3. The letter further stated that Petitioner would continue to be detained due to his "criminal history and lack of non-governmental sponsors and/or community ties" which "reflect[ed] a significant risk if flight if [Petitioner] were to be released from ICE custody." Id. at 4. After December 6, 2017, if Petitioner was not removed or released from custody, jurisdiction over Petitioner's case would be transferred to ICE's Headquarters Removal and International Operations Unit ("HQPDU") for a "final determination regarding [Petitioner's] custody." Id.

On November 28, 2017, Petitioner filed with the Boston immigration court an "Emergency Motion for Stay of Removal Pending Motion to Reopen Decision & Motion to

---

[5] The Field Office Director's subsequent Decision to Continue Detention states that Petitioner was arrested for this offense but the case "is still pending" as of August 25, 2017. Resp't Third Suppl. Br. Ex. 3, at 3 [#35-3].

Terminate." Pet'r's Pet. Ex. 2, at 2 [#1-2]. Petitioner argued that recent intervening First Circuit

and Supreme Court precedent established that simple assault in Rhode Island is not an

aggravated felony. Id. at 1 (citing United States v. Holloway, 630 F.3d 252, 256 (1st Cir. 2011),

Whyte v. Lynch, 807 F.3d 463, 471-72 (1st Cir. 2015), United States v. Fish , 758 F.3d 1, 3 (1st

Cir. 2014), and Johnson v. United States (Johnson I), 559 U.S. 133, 140 (2010)).

In a December 20, 2017, decision, the immigration judge explained that he is bound by

the First Circuit's decision in Lopes v. Keisler, 505 F.3d 58, 63 (1st Cir. 2007), finding that the

offense of assault under Rhode Island law constitutes a crime of violence under 18 U.S.C.

§ 16(a), and consequently, an aggravated felony for immigration purposes, and could not

consider whether the later cases should control by implication. Resp't Mem. in Supp. of Mot.

Dismiss Ex. 1 at 3 [#17-1].  Matter of Guerrero, 25 I. & N. Dec. 631, 633 (BIA 2011), cited by

the immigration judge, similarly finds assault under Rhode Island law to be a crime of violence

based on Lopes.[6] Id.

---

[6] Both Lopes and Guerrero noted that the determination of whether a particular conviction
constitutes a "crime of violence" required a two-step categorical approach, and that where the
statute of conviction is broad enough to encompass acts that would constitute a crime of violence
and those that would not, a second step must be applied. Lopes, 505 F.3d at 62; Matter of
Guerrero, 25 I. & N. Dec. at 633. At the second step, the judge considers whether the record of
conviction reveals that all the elements of a "crime of violence" have been established, and to
make this determination, restricts review to the record of conviction. Lopes, 505 F.3d at 62;
Matter of Guerrero, 25 I. & N. Dec. at 633. "Typically, the record includes the charging
document, jury instructions, and verdict form, or in the context of a plea, the written plea
agreement and the transcript of the change-of-plea colloquy." Shepard v. United States, 544 U.S.
13, 26 (2005). In Lopes, the court found that Rhode Island General Laws section 11-5-3 was that
broad, and accordingly, the second step would be applied. 505 F.3d at 62. The second step was
also applied in Matter of Guerrero. 25 I. & N. Dec. at 633. Despite aspiring to follow this two-
step approach, the immigration judge's decision in Petitioner's case includes no discussion of the
record of conviction and simply concludes that any conviction under the Rhode Island statute
constitutes a "crime of violence."

Petitioner filed an appeal of the immigration judge's decision and an Emergency Motion to Stay Removal with the BIA on January 16, 2018. Pet'r Opp. Ex. 1 [#20-1]; Pet'r Opp. Ex. 2 [#20-2]. The BIA denied the request for a stay of removal on January 26, 2018. Suppl. Filing in Supp. of Resp't Mot. Dismiss Ex. 1, at 1 ("Resp't First Suppl. Br.") [#25-1]. According to the record before this court, BIA has not yet rendered a decision on Petitioner's appeal of the immigration judge's decision, despite the government not having filed any brief in opposition. Transcript of March 5, 2018 Oral Argument at 5:6 [#33]; Resp. Ct. Order Regarding Bd. of Immigration Appeal Denial of Stay of Removal, Ex. 2 [#39-2].

Meanwhile, on December 12, 2017, Petitioner filed the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [#1] seeking relief from this court under Zadvydas v. Davis, 533 U.S. 678 (2001). Petitioner asserted that he had been in custody more than six months, that he was not removable (for the reasons set forth in his motion before the immigration court), and that his continued detention was unreasonable.

Two days later, Respondent filed a Notice of Intent to Remove [#6], indicating that Respondent had the travel documents for Petitioner and intended to remove him the week of December 18, 2017. That same day, Petitioner filed his Motion for Preliminary Injunction, Temporary Restraining Order and Request for Expedited Hearing [#9], seeking an expedited hearing and temporary restraining order based on the government's notice of intent to remove. The following day, on December 15, 2017, the emergency duty judge ordered Respondent not to remove Petitioner until the assigned judge who was out of the country could addressed the merits of the Petition. Order [#12]. Respondent promptly notified the court that ICE had canceled Petitioner's scheduled removal and agreed not to remove Petitioner until the court could address the merits of the Petition. Notice of Cancellation of Removal [#13].

On January 3, 2018, Respondent filed its <u>Motion to Dismiss Petition for Writ of Habeas Corpus</u> [#16], arguing that the court does not have jurisdiction to consider Petitioner's challenge to his removal, and that as to his detention, his confinement is lawful as there is a significant likelihood that he will be removed to Cape Verde in the reasonably foreseeable future. The parties have extensively briefed the various issues and the court held oral argument.

On March 26, 2018, Respondent informed the court that Respondent is in possession of renewed travel documents for Petitioner and ICE has scheduled Petitioner's removal for the month of June 2018. Third Suppl. Filing in Supp. of Resp't Mot. Dismiss, at 1 ("Resp't Fourth Suppl. Br.") [#36].

II.   <u>Discussion</u>

Respondent seeks to dismiss this petition for failure to state a claim as to Petitioner's claim under <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001) and for lack of subject matter jurisdiction as to Petitioner's remaining claims and requests for relief. The court begins with the issue of jurisdiction.

*A.   The District Court's Jurisdiction as to Petitioner's Stay Request*

Respondent argues that under the REAL ID Act of 2005, the district court has no jurisdiction in removal cases except as to challenges to "pure detention." Resp't Mem. in Supp. of Mot. Dismiss at 4-5 & n.3 [#17]; <u>see also</u> <u>Ishak v. Gonzales</u>, 422 F.3d 22, 28 (1st Cir. 2005) ("The Real ID Act amended section 242 of the INA, 8 U.S.C. § 1252, to place review of all final removal orders, for both criminal and non-criminal aliens, in the courts of appeals."); 8 U.S.C. § 1252(a)(5) (appropriate court of appeals "shall be the sole and exclusive means for judicial review of an order of removal"). Petitioner agrees that this court has no jurisdiction to review the removal order itself, but contends that the court may issue a stay so that Petitioner may vindicate

his "right to fully litigate the . . . issue of whether or not, as a lawful permanent resident, he is actually removable from the United States." Pet'r Opp. at 12 [#20].

Petitioner cites two recent cases to support the district court's jurisdiction. In Devitri v. Cronen, 290 F. Supp. 3d 86, 91 (D. Mass. 2017), the petitioners argued that they have a statutory right to move to reopen based on changed country conditions that arose after the Orders of Removal became final. See also 8 U.S.C. § 1231(b)(3)(A) (Congress mandated that ICE may not remove an alien to a country if the government decides that "the alien's life or freedom would be threatened in that country because of the alien's . . . religion"); 8 C.F.R. § 208.16(c) (implanting government's obligations under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Convention Against Torture") and providing for withholding or deferral of removal if an alien "is more likely than not to be tortured in the country of removal); 8 U.S.C. § 1229a(c)(7)(C)(ii) (no time limit for the filing of motion to reopen if the basis of the motion is to seek asylum relief), 8 C.F.R. §§ 1003.2(c)(3) & 1003.23(b)(4) (claims for relief from deportation under 8 U.S.C. § 1231(b)(3)(A) based on "changed country conditions" or under the Convention Against Torture may be adjudicated in a motion to reopen). As here, the government argued that the court did not have jurisdiction over petitioners' request for a stay of removal.

The Devitri court concluded that it had subject matter jurisdiction under 28 U.S.C. § 2241 and 28 U.S.C. § 1331 "to ensure that there are adequate and effective alternatives to habeas corpus relief," for "if the jurisdictional bar in 8 U.S.C. § 1252(g) prevented the Court from giving Petitioners [there] an opportunity to raise [statutory or constitutional] claims through fair

and effective administrative procedures, the statute would violate the Suspension Clause as applied."[7] 290 F. Supp. 3d at 93.

The court explained that the petitioners' right to file a motion to reopen was statutory, and that although that motion must typically be exercised within 90 days of receiving a final removal order, Congress had set no time limit where the filing was based on changed country conditions (where certain additional conditions are met). Id. at 92 (citing Dada v. Mukasey, 554 U.S. 1, 4-5, 14, 18 (2008); Kucana v. Holder, 558 U.S. 233, 242 (2010); 8 U.S.C. § 1229a(c)(7)). The court concluded further that the petitioners there, who were not in custody and who claimed they feared persecution and torture if removed, had provided persuasive evidence that the BIA would not rule on their non-emergency motions to stay their orders of removal before they were deported to the very countries where they fear persecution and torture. Devitri, 290 F. Supp. 3d at 95.

Similarly, in Hamama v. Adducci, 258 F.Supp.3d 828, 830-832 (E.D. Mich. 2017), the court found that in the absence of a court-ordered stay, deportations of petitioners would begin immediately, and that petitioners had presented evidence, not contested by the Government, that many will face death. The court concluded that the alternative to habeas relief for Petitioners was plainly inadequate and ineffective. Id. at 840.

Petitioner argues here that he has a procedural due process right under the United States Constitution to litigate the "basic issue of whether or not, as a lawful permanent resident, he is

---

[7] The Suspension Clause of the United States Constitution dictates that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. Because of the Suspension Clause, "some 'judicial intervention in deportation cases' is unquestionably 'required by the Constitution.'" I.N.S. v. St. Cyr, 533 U.S. 289, 300 (2001), quoting Heikkila v. Barber, 345 U.S. 229, 235 (1953).

actually even removable from the United States." Pet'r Opp. at 12 [#20]. Petitioner's

circumstances are distinguishable from <u>Devitri</u> and <u>Hamama</u>. Because he bases his motion to

reopen on intervening law eliminating the charge of removability, rather than on changed

country circumstances and fears of prosecution in the country to which he has been ordered

deported, and the motion is brought more than 90 days after the final order of removal, it does

not appear that he has a statutory or due process right to have the motion to reopen heard that

would support this court's jurisdiction based on the Suspension Clause to grant the motion to

stay.

 This conclusion is troubling. Petitioner, who has lived in this country since the age of

three and became a lawful permanent resident, argues that he may not be accorded any judicial

review of his claim that he is not removable as a matter if law. Notably, although Respondent

disputes this court's jurisdiction, Respondent does not disagree that Petitioner should have an

opportunity to litigate the underlying legal issue. The government argues instead that: judicial

review of the underlying removal order will not be precluded, even if he is deported; and that

judicial review as to the decision to execute the removal orders lies with the courts of appeals.

Resp't Third Suppl. Br. at 8 [#35].

 As to the first argument, the government states that Petitioner "is wrong" in arguing that

he will "be deprived of jurisdiction to litigate the issues surrounding his motion to reopen" if he

is removed from the United States. <u>Id</u>. at 5 (citing <u>Santana v. Holder</u>, 731 F.3d 50, 51 (1st Cir.

2013) and decisions from other circuits). But <u>Santana</u> only addresses an alien's statutory right to

file a motion to reopen, and not the circumstance presented here, where the motion to reopen was

not filed within ninety days of the Final Order of Removal. 731 F.3d at 51. Another decision

issued by the same panel on the same day, <u>Bolieiro v. Holder</u>, 731 F.3d 32, 34 (1st Cir. 2013),

did involve an individual whose motion was filed long after the removal order became final. In that case, the agency had not based its refusal to reopen on this late filing but on the individual's departure from the United States. The case may "reinforce[] that the post-departure bar does not overcome the statutory right to file a motion to reopen," but it also leaves the agency free to "'offer[] an alternative basis for refusing to consider' the motion, that . . . may be allowed," as the government notes in a footnote. Resp't Third Suppl. Br. at 5 n. 2 [#35] (citing Bolieiro, 731 F.3d at 39).

Nor is it evident that Petitioner, once removed, will be able to return to the United States even if he succeeds on his motion to reopen. Respondent argues that should the First Circuit return him to his legal permanent resident status, ICE may even facilitate his return. Id. at 5-9. The ICE Policy Directive cited by the government dates back to 2012, however, and the government offers no response to Petitioner counsel's contention that a more recent Executive Order bars reentry.[8] Indeed, even before that Executive Order, the effectiveness of the ICE Policy Directive has been subject to criticism. See e.g. "Victory Denied: After Winning on Appeal, an Inadequate Return Policy Leaves Immigrants Stranded Abroad," 19-19 Bender's Immigr. Bull. 02 (2014) (arguing that the government does not assure the return of immigrants so entitled under the policy, and that such immigrants face significant practical obstacles,

---

[8] At the hearing on this matter, counsel for Petitioner cited a case in the United States District Court, Northern District of California, in which a petitioner was denied reentry after his motion to reopen was granted and was only afforded relief after seeking a writ of mandamus to order the Department of Homeland Security to comply with the immigration court's order to return the petitioner to the United States for his reopening proceedings. See Complaint, Roberto Lazaro Manuel v. Department of Homeland Security, et.al., No. 18-cv-01287 (N.D. Cal. Feb. 27, 2018), ECF. No. 1; Plaintiff's Notice of Dismissal, Roberto Lazaro Manuel v. Department of Homeland Security, et.al., No. 18-cv-01287 (N.D. Cal. Mar. 29, 2018), ECF. No. 22.

including paying for their return travel, and inconsistent priorities, policies and coordination between government agencies).

Respondent's sanguine view of the availability of judicial review of the execution of the removal order in the courts of appeals under Section 1252 also is not supported by the statute or the authorities he cites, and that view is undermined as noted in parentheticals, and footnotes in the government's own brief. Section 1252(g) provides that except as provided in Section 1252, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to . . . execute removal orders against any alien." 8 U.S.C. § 1252(g) (emphasis added). While the government asserts nonetheless that the "courts of appeals have ample authority to halt the execution of a removal order," that "[a]liens can obtain review, reopening, or stays of removal orders . . .  with judicial review available in the courts of appeals," and that "the stay request is properly before the appeals court," the statutory scheme also provides (as the government simultaneously notes) the court of appeals' statutory authority applies only as to final orders of the Board of Immigration Appeals ("BIA"). Resp't Third Suppl. Br. at 4-5 [#35]. In a case such as this one, where the BIA has not issued a final order on the motion to reopen, the court of appeals have no jurisdiction under Section 1252 to stay the order of removal.[9]

Respondent asserts finally that should the court grant Respondent's motion to dismiss, "he may have another remedy in the First Circuit." Id. at 8. Respondent suggests that since

---

[9] Petitioner agrees that relief is not available in the court of appeals under the statutory scheme, citing Gando-Coello v. Immigration and Naturalization Service, 857 F.2d 25 (1st Cir. 1988). In that case, the court in considering an earlier version of the statute found that the circuit courts only have jurisdiction to review "final orders of deportation," and that "a denial of a stay of deportation pending disposition of a motion to reopen is not a 'final order' . . . ." Id. at 26. (citing 8 U.S.C. § 1105a(a)).

Petitioner's motion to reopen remains pending, he "may move for a stay of removal in the court

of appeals, under the All Writs Act, to preserve the appeals court's power to grant effective relief

if an administrative decision on a motion to reopen is eventually presented to them for review."

Id. at 9. Although Respondent states that review in the courts of appeals would be consistent with

the statutory scheme, as noted above, such review does not follow from Section 1252. But

Respondent's citation to Telecommunications Research and Action Center v. Federal

Communications Commission, 750 F.2d 70 (D.C. Cir. 1984) does seem well-placed, as that court

explained that:

> the authority of the appellate court "is not confined to the issuance of writs in aid
> of jurisdiction already acquired by appeal but extends to those cases which are
> within its appellate jurisdiction although no appeal has been perfected." . . . This
> authority extends to support an ultimate power of review, even though it is not
> immediately and directly involved. . . . In other words, [28 U.S.C.] section
> 1651(a) empowers a federal court to issue writs of mandamus necessary to protect
> its prospective jurisdiction. . . .

Id. at 76 (citations and footnotes omitted).

Here, the BIA's interlocutory finding that "there is little likelihood that the appeal will be

sustained" may be neither surprising, nor significant. The immigration judge has suggested that

he and the BIA are bound by earlier First Circuit precedent concerning the statute of conviction

and is precluded from making any inferences from later First Circuit and Supreme Court

decisions addressing other statutes. See Resp't Mem. in Supp. of Mot. Dismiss Ex. 1 [#17-1]. So

long as a final BIA decision is not actually issued, no appeal may be perfected that would allow

the First Circuit to consider on statutory review whether assault and battery in Rhode Island is an

aggravated felony in light of the more recent cases cited by Petitioner. Respondent is correct,

however, that whether a Writ should issue to preserve appellate review here is for the court of

appeals, not the district court.

*B. Petitioner's Continued Detention*

Respondent moves to dismiss Petitioner's challenge to his continued detention, arguing that there is a significant likelihood of removal. Respondent states that the Cape Verde government issued (and reissued) travel document on November 24, 2017, December 28, 2017, and March 12, 2018 and that Respondent has scheduled Petitioner's removal to take place during the month of June 2018. See id. at Ex. 2 [#17-2]; Second Suppl. Filing in Supp. Mot. Dismiss Ex. 1, at 1 [#29-1]; Resp't Fourth Suppl. Br. Ex. 1 [#36-1]. In response, Petitioner argues that that there is no significant likelihood of removal, regardless of the travel documents. Petitioner argues further that his release is required because ICE did not comply with its own regulations.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court rejected an interpretation of post-removal order detention statutes that would have resulted in indefinite, perhaps permanent, detention, and concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. In the interest of "uniform administration in the federal courts," the Supreme Court set an initial six-month period for detention, and after that, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701. Petitioner claims that the six month period should not have been applicable here, but regardless, Petitioner must still provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Petitioner argues that he meets this standard because he is not deportable. In the absence of a stay of execution of the order of removal, however, Petitioner faces a significant likelihood of removal, regardless of whether that removal should stand. Accordingly, unless the

First Circuit issues a writ of mandamus or takes other action so that it may review the underlying issue, Petitioner is unable to meet his burden under <u>Zadvydas</u>.

Given this determination, the court finds Petitioner's remaining arguments concerning his detention to be moot.

III.   <u>Conclusion</u>

Accordingly, Petitioner's <u>Motion for Preliminary Injunction, Temporary Restraining Order and Request for Expedited Hearing</u> [#9] is DENIED, Respondent's <u>Motion to Dismiss Petition for Writ of Habeas Corpus</u> [#16] is ALLOWED, and <u>Petition for Writ of Habeas Pursuant to 28 U.S.C. § 2241</u> [#1] is DISMISSED. In the event that the order of removal is stayed by the BIA or the First Circuit, and Petitioner is not granted a bail hearing regarding his detention, Petitioner may file a new habeas petition, marked as a related case.

IT IS SO ORDERED.

Date: May 29, 2018                                         /s/ Indira Talwani_____
                                                                United States District Judge